UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REGIONS BANK, an                                Case No.
Alabama banking corporation, as
successor by merger to AmSouth Bank,

      Plaintiff,

v.

MOHAMAD R. SAMIIAN, individually,
BAHMAN VENUS, individually,
HORMOZ KHOSRAVI, individually,
and HOSSEIN RAMEZANI, individually,

      Defendants.

_____/

## COMPLAINT

Plaintiff REGIONS BANK ("Regions"), an Alabama banking corporation, as successor by merger to AmSouth Bank ("AmSouth"), by and through its undersigned counsel, sues Defendants, MOHAMAD R. SAMIIAN ("Samiian"), BAHMAN VENUS ("Venus"), HORMOZ KHOSRAVI ("Khosravi"), and HOSSEIN RAMEZANI ("Ramezani") (collectively with Samiian, Venus and Khosravi, as the "Defendants"), and states as follows:

### JURISDICTION, VENUE AND PARTIES

1.    This is an action for damages which exceeds $75,000.00, exclusive of interest, costs and attorney's fees.

2.    AmSouth was an Alabama banking corporation authorized to transact business in the state of Florida, prior to its merger with Regions. Regions is an Alabama banking

corporation with its principal place of business in Alabama, and is authorized to do business in the state of Florida.

3.  Samiian is an individual residing in Duval County, Florida.

4.  Venus is an individual residing in Duval County, Florida.

5.  Khosravi is an individual residing in Duval County, Florida.

6.  Ramezani is an individual residing in Duval County, Florida.

7.  Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the Defendants reside in this district.

8.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (a) the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees, and (b) there is complete diversity of citizenship between Regions and the Defendants.

## GENERAL ALLEGATIONS

9.  Apadana Investments, Inc. ("Apadana"), a Florida corporation, is authorized to do business in the state of Florida.[1]

10.  On or about March 11, 2005, Apadana executed and delivered to Regions' predecessor-in-interest, AmSouth, a Promissory Note in the principal amount of $2,400,000.00 (the "Note"). A true and correct copy of the Note is attached as **Exhibit "A"** and incorporated herein by reference.

11.  On or about May 15, 2008, Apadana executed and delivered to Regions, a Promissory Note in the principal amount of $2,066,666.75 (the "Additional Note") (collectively with the Note, as "Note One"), in order to modify/amend the terms of the Note. A true and

---

[1] By this Complaint, Regions seeks no relief whatsoever against Apadana.

correct copy of the Additional Note is attached as **Exhibit "B"** and incorporated herein by reference.

12.    On or about February 28, 2006, Apadana executed and delivered to Regions' predecessor-in-interest, AmSouth, a Promissory Note in the principal amount of $2,162,000.00 (the "Second Note"). A true and correct copy of the Second Note is attached as **Exhibit "C"** and incorporated herein by reference.

13.    On or about May 15, 2008, Apadana executed and delivered to Regions, a Promissory Note in the principal amount of $2,152,494.11 (the "Second Additional Note") (collectively with the Second Note, as "Note Two"), in order to modify/amend the terms of the Second Note. A true and correct copy of the Second Additional Note is attached as **Exhibit "D"** and incorporated herein by reference.

14.    On or about May 2, 2008, Apadana executed and delivered to Regions, a Promissory Note in the principal amount of $700,000.00 ("Note Three") (collectively with Note One and Note Two, as the "Notes"). A true and correct copy of Note Three is attached as **Exhibit "E"** and incorporated herein by reference.

15.    Regions is the owner and holder of the Notes, by virtue of AmSouth's merger with Regions.

16.    Apadana has defaulted under Note One by failing to pay to Regions all sums due under Note One at the scheduled maturity date of May 15, 2010.[2] Apadana has defaulted under Note Two by failing to pay to Regions all sums due under Note Two at the scheduled maturity

---

[2] Apadana executed and delivered to Regions, a Letter Agreement dated November 23, 2009, thereby extending the maturity date of Note One until February 15, 2010. Thereafter, Apadana executed and delivered to Regions, a Letter Agreement dated March 25, 2010, thereby extending the maturity date of Note One until May 15, 2010. True and correct copies of the above-referenced Letter Agreements, with respect to Note One, are attached hereto as Exhibits **"F" and "G"**, respectively.

date of May 15, 2010.[3] Apadana has defaulted under Note Three by failing to pay to Regions all sums due under Note Three at the scheduled maturity date of May 1, 2010.[4]

17.     There is now due and owing to Regions from Apadana, the principal balance in the amount of $2,066,666.75, accrued but unpaid interest in the amount of $14,307.88 through July 15, 2010, plus late fees of $176.03, for a total amount due on Note One in the amount of $2,081,150.66 as of July 15, 2010, plus per diem rate of interest of $120.54 accruing thereafter.

18.     There is now due and owing to Regions from Apadana, the principal balance in the amount of $2,152,494.11, accrued but unpaid interest in the amount of $14,902.08 through July 15, 2010, plus late fees of $183.50, for a total amount due on Note Two in the amount of $2,167,579.69 as of July 15, 2010, plus per diem rate of interest of $125.54 accruing thereafter.

19.     There is now due and owing to Regions from Apadana, the principal balance in the amount of $700,000.00, accrued but unpaid interest in the amount of $4,218.25 through July 15, 2010, plus late fees of $96.83, for a total amount due on Note Three in the amount of $704,315.08 as of July 15, 2010, plus per diem rate of interest of $40.79 accruing thereafter.

20.     Regions has retained the undersigned counsel and has obligated itself to pay its attorneys a reasonable fee for their services rendered on its behalf, which the Defendants are liable for pursuant to the terms and conditions of the documents attached hereto.

---

[3] Apadana executed and delivered to Regions, a Letter Agreement dated December 14, 2009, thereby extending the maturity date of Note Two until February 15, 2010. Thereafter, Apadana executed and delivered to Regions, a Letter Agreement dated March 25, 2010, thereby extending the maturity date of Note Two until May 15, 2010. True and correct copies of the above-referenced Letter Agreements, with respect to Note Two, are attached hereto as Exhibits "H" and "I", respectively.

[4] Apadana executed and delivered to Regions, a Letter Agreement dated May 29, 2009, thereby extending the maturity date of Note Three until August 1, 2009. Thereafter, Apadana executed and delivered to Regions, a Letter Agreement dated August 5, 2009, thereby extending the maturity date of Note Three until November 1, 2009. Thereafter, Apadana executed and delivered to Regions, a Letter Agreement dated November 23, 2009, thereby extending the maturity date of Note Three until February 1, 2010. Thereafter, Apadana executed and delivered to Regions, a Letter Agreement dated March 25, 2010, thereby extending the maturity date of Note Three until May 1, 2010. True and correct copies of the above-referenced Letter Agreements, with respect to Note Three, are attached hereto as Exhibits "J", "K", "L" and "M", respectively.

21.    All conditions precedent to Regions' right to bring this action, to the relief requested in this pleading, pursuant to the documents attached hereto, and to the maintenance of this action have been performed, or in the alternative, have occurred.

## COUNT I:
## ACTION ON GUARANTY AGAINST MOHAMAD R. SAMIIAN

22.    Fifth Third alleges and incorporates herein paragraphs 1 through 21 above.

23.    To secure payment of the Notes, on or about May 2, 2008, Samiian executed and delivered to Regions, a Commercial Guaranty (the "Samiian Guaranty") guaranteeing payment of all amounts due to Regions, pursuant to the loan documents attached hereto.  A true and correct copy of the Samiian Guaranty is attached hereto as **Exhibit "N"** and incorporated herein by reference.

24.    Regions is the owner and holder of the Samiian Guaranty.

25.    Due to the default of Apadana under the Notes, Regions is entitled to enforce the terms and conditions of the Samiian Guaranty.

**WHEREFORE,** Regions Bank demands a Final Judgment in favor of Regions Bank and against Mohamad R. Samiian, for damages in the sum of $4,953,045.43 as of July 15, 2010, together with additional interest accruing after July 15, 2010, late fees, court costs and attorney's fees, and to grant such other and further relief as this Court may deem just and equitable.

## COUNT II:
## ACTION ON GUARANTY AGAINST BAHMAN VENUS

26.    Fifth Third alleges and incorporates herein paragraphs 1 through 21 above.

27.    To secure payment of the Notes, on or about May 2, 2008, Venus executed and delivered to Regions, a Commercial Guaranty (the "Venus Guaranty") guaranteeing payment of all amounts due to Regions, pursuant to the loan documents attached hereto.  A true and correct

copy of the Venus Guaranty is attached hereto as **Exhibit "O"** and incorporated herein by reference.

28.     Regions is the owner and holder of the Venus Guaranty.

29.     Due to the default of Apadana under the Notes, Regions is entitled to enforce the terms and conditions of the Venus Guaranty.

**WHEREFORE,** Regions Bank demands a Final Judgment in favor of Regions Bank and against Bahman Venus, for damages in the sum of $4,953,045.43 as of July 15, 2010, together with additional interest accruing after July 15, 2010, late fees, court costs and attorney's fees, and to grant such other and further relief as this Court may deem just and equitable.

## COUNT III:
## ACTION ON GUARANTY AGAINST HORMOZ KHOSRAVI

30.     Fifth Third alleges and incorporates herein paragraphs 1 through 21 above.

31.     To secure payment of the Notes, on or about May 2, 2008, Khosravi executed and delivered to Regions, a Commercial Guaranty (the "Khosravi Guaranty") guaranteeing payment of all amounts due to Regions, pursuant to the loan documents attached hereto.  A true and correct copy of the Khosravi Guaranty is attached hereto as **Exhibit "P"** and incorporated herein by reference.

32.     Regions is the owner and holder of the Khosravi Guaranty.

33.     Due to the default of Apadana under the Notes, Regions is entitled to enforce the terms and conditions of the Khosravi Guaranty.

**WHEREFORE,** Regions Bank demands a Final Judgment in favor of Regions Bank and against Hormoz Khosravi, for damages in the sum of $4,953,045.43 as of July 15, 2010, together with additional interest accruing after July 15, 2010, late fees, court costs and attorney's fees, and to grant such other and further relief as this Court may deem just and equitable.

**COUNT IV:**
**ACTION ON GUARANTY AGAINST HOSSEIN RAMEZANI**

34.     Fifth Third alleges and incorporates herein paragraphs 1 through 21 above.

35.     To secure payment of the Notes, on or about May 2, 2008, Ramezani executed and delivered to Regions, a Commercial Guaranty (the "Ramezani Guaranty") guaranteeing payment of all amounts due to Regions, pursuant to the loan documents attached hereto. A true and correct copy of the Ramezani Guaranty is attached hereto as **Exhibit "Q"** and incorporated herein by reference.

36.     Regions is the owner and holder of the Ramezani Guaranty.

37.     Due to the default of Apadana under the Notes, Regions is entitled to enforce the terms and conditions of the Ramezani Guaranty.

**WHEREFORE,** Regions Bank demands a Final Judgment in favor of Regions Bank and against Hossein Ramezani, for damages in the sum of $4,953,045.43 as of July 15, 2010, together with additional interest accruing after July 15, 2010, late fees, court costs and attorney's fees, and to grant such other and further relief as this Court may deem just and equitable.

DATED this 26th day of July, 2010.

Respectfully submitted,

W. Glenn Jensen, Esq.
Florida Bar No. 0126070
**ROETZEL & ANDRESS**
P.O. Box 6507
Orlando, FL 32802-6507
Phone: (407) 896-2224
Fax:    (407) 835-3596
gjensen@ralaw.com

**COUNSEL FOR REGIONS BANK**

# PROMISSORY NOTE

$2,400,000.00

Jacksonville, Florida
March 11, 2005

1.   Principal.

FOR VALUE RECEIVED, the undersigned, Apadana Investments, Inc., a Florida corporation ("Borrower"), whose address is 824 Waterman Road South, Jacksonville, Florida 32207, promises to pay to AmSouth Bank ("Lender"), whose address is 51 W. Bay Street, Jacksonville, Florida 32202, the principal sum of Two Million Four Hundred Thousand Dollars ($2,400,000.00), with annual interest thereon calculated in accordance with the terms and provisions provided below. All sums owing under this note are payable in lawful money of the United States of America.

2.   Interest. From date hereof interest shall accrue on the principal balance outstanding under this note at a variable rate equal to two hundred (200) basis points (2.00%) above the LIBOR rate, as determined from time to time, until this note is paid in full. Interest calculations shall be based on a 360-day year and charged on the basis of actual days elapsed. The determination of the LIBOR rate is more particularly described as follows:

A per annum rate equal to the rate per annum offered by prime banks in the London interbank eurodollar market for deposits in United States dollars having a one (1) month maturity, as determined by Lender with reference to the financial information reporting service used by Lender at the time of such determination (the "LIBOR Rate") plus 2.00%. This rate is subject to change on April 11, 2005, and will be subject to change on the same day of every month thereafter (the "Change Date"). The interest rate change is based on changes in the LIBOR Rate. The Lender will determine the LIBOR Rate that will be in effect as of the Change Date; however, if the Change Date is not a Business Day, then the Lender will determine the LIBOR Rate that will be in effect as of the Business Day immediately following the Change Date. Changes in the interest rate on the Loan will be effective as of the Change Date. As used herein, "Business Day" means a day of the year on which banks are not required or authorized to close in Birmingham, Alabama, and a day in which dealings are carried on in the London interbank eurodollar market.

As used herein, "LIBOR Reserve Requirements" means the maximum reserves (whether basic, supplemental, marginal, emergency, or otherwise) prescribed by the Board of Governors of the Federal Reserve System (or any successor) with respect to liabilities or assets consisting of or including "Eurocurrency liabilities" (as defined in Regulation D of the Board of Governors of the Federal Reserve System). If there is any change in LIBOR Reserve Requirements, then Borrower shall, from time to time upon demand by Lender, pay to Lender such additional amounts as Lender may deem necessary to compensate Lender for any increased costs resulting from such change. Borrower agrees that Lender's determination of such additional and increased costs will be made in Lender's sole discretion and shall be conclusive. If, because of the introduction of or any change in, or because of any judicial, administrative, or other governmental interpretation of, any applicable law or regulation, there shall be any increased in the

cost to Lender of making, funding, maintaining, or allocating capital to any amount outstanding under the Loan bearing interest at a rate based on the LIBOR Rate, then Borrower shall, from time to time upon demand by Lender, pay to Lender additional amounts sufficient to compensate Lender for such increased costs.

If, because the introduction of or any change in, or because of any judicial, administrative, or other governmental interpretation of, any applicable law or regulation, it becomes unlawful for Lender to make, fund, or maintain any such advance or balance at a rate based on the LIBOR Rate, then Lender's obligation to make, fund, or maintain any such advance or balance shall terminate and any such affected outstanding advance or balance shall bear interest at a rate equal to the prime rate of Lender in effect from time to time as designated by Lender (the "Prime Rate") plus 0%, with changes in such interest rate to take effect as the Prime Rate changes. The Prime Rate is merely a reference rate and is not necessarily the best or lowest rate offered by Lender.

3.     Monthly Installments of Principal and Interest and Maturity Date.   Principal and interest shall become due and payable on the dates and in the manner as follows:

a.     Interest Only.  Payments of interest on the amount of the unpaid principal balance shall be due and payable monthly, commencing on the 11th day of April, 2005, and continuing on the same day of each successive month next thereafter until and including March 11, 2006.

b.     Monthly Installments of Principal Plus Interest.  Successive installments of principal in the fixed amount of $13,333.33 (based on a 15 year amortization) , plus payments of interest on the amount of the unpaid principal balance shall be due and payable monthly, commencing on the 11th day of April, 2006, and continuing on the same day of each successive month next thereafter until and including March 11, 2008, at which time the entire unpaid principal balance, together with any accrued and unpaid interest, is due and payable in full (the " maturity date").

Each payment will be applied to interest before principal.

All amounts required to be paid under Lender's note shall be payable at Lender's office located at 51 W. Bay Street, Jacksonville, Florida 32202, or at another place as Lender, from time to time, may designate in writing.

4.     Security.

a.     This note is secured by, among other things, a mortgage and security agreement ("mortgage") bearing the date of this note, executed and delivered by Borrower, as mortgagor, to Lender, as mortgagee, encumbering property in St. Johns County, Florida, as more fully described in the Mortgage.

b.     This note is further secured by additional collateral documentation, including assignments and guarantees ("security documents"), which were executed and delivered to Lender on the date of this note.

c.     All of the agreements, conditions, covenants, provisions, and stipulations contained in the mortgage and security documents that are to be kept and performed by Borrower and any guarantors of the note, are made hereby a part of this note to the same extent and with the same force and effect as if they were set forth fully herein, and Borrower covenants and agrees to keep and perform them or cause them to be kept and performed strictly in accordance with their terms.

5.     Prepayment. Borrower may prepay the whole or any portion of this note on any date, on five days' notice to Lender without penalty.

Any payments of the principal sum received by Lender under the terms of this note shall be applied in the following order of priority: (a) first, to any accrued interest; (b) second, to any late charges or other expenses; and (c) third, to the outstanding principal sum.

6.     Late Charge.

If any required payment, including the final payment due on the maturity date, is not paid within fifteen (15) days from and including the date on which it was due (whether by acceleration or otherwise) (except for the payment due on the maturity date of which there is no grace period), then, in each such event, all past due amounts shall be subject to a late penalty of five cents on every dollar owed (the "late penalty"). This late penalty shall be in addition to any other interest due as provided in Paragraph 2 and in addition to all other rights and remedies provided herein or by law for the benefit of the Lender on a default. The acceptance of any payment by the Lender of the note shall not act to restrict the Lender at all in exercising any other rights under the note or the law, to waive or release Borrower from any obligations contained herein, or to extend the time for payments due under this note.

7.     Default and Remedies.

If Borrower fails to pay principal and/or interest on the date on which it falls due or to perform any of the agreements, conditions, covenants, provisions, or stipulations contained in this note, in the mortgage, or in the security documents, then Lender, at its option and without notice to Borrower, may declare immediately due and payable the entire unpaid balance of principal with interest from the date of default at the highest rate permitted by law and all other sums due by Borrower hereunder or under the mortgage, anything herein or in the mortgage to the contrary notwithstanding. Payment of this sum may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Lender in this note, in the mortgage, or in the security documents. In that case, Lender also may recover all costs in connection with suit, a reasonable attorney's fee for collection, and interest on any judgment obtained by Lender at the highest rate permitted by law.

The remedies of Lender and the warrants provided in this note, the mortgage, or the security documents shall be cumulative and concurrent, and they may be pursued singularly, successively, or together at the sole discretion of Lender. They may be exercised as often as occasion shall occur, and failing to exercise one shall in no event be construed as a waiver or release of it.

8.     Attorneys' Fees and Costs.

If Lender engages any attorney to enforce or construe any provision of this note, in the mortgage, or in the security documents, or as a consequence of any default whether or not any legal action is filed, Borrower immediately shall pay on demand all reasonable attorneys' fees and other Lender's costs, together with interest from the date of demand until paid at the highest rate of interest then applicable to the unpaid principal, as if the unpaid attorneys' fees and costs had been added to the principal.

9.      Waivers.

a.      Borrower hereby waives and releases all benefit that might accrue to Borrower by virtue of any present or future laws of exemption with regard to real or personal property or any part of the proceeds arising from any sale of that property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. Borrower agrees that any real estate that may be levied on under a judgment obtained by virtue hereof, on any writ of execution issued thereon, may be sold on any writ in whole or in part in any order desired by Lender.

b.      Borrower and all endorsers, sureties, and guarantors jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this note. They agree that each shall have unconditional liability without regard to the liability of any other party and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender. Borrower and all endorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, endorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder.

c.      Lender shall not be considered by any act of omission or commission to have waived any of its rights or remedies hereunder, unless the waiver is in writing and signed by Lender, and then only to the extent specifically set forth in writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

10.     Notices.

All notices required under or in connection with this note shall be delivered or sent by certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth in Paragraph 1 hereof, or to another address that any party may designate from time to time by notice to the others in the manner set forth herein. All notices shall be considered to have been given or made either at the time of delivery thereof to an officer or employee or on the third business day following the time of mailing in the aforesaid manner.

11.     Costs and Expenses.

Borrower shall pay the cost of any revenue tax or other stamps now or hereafter required by law at any time to be affixed to this note.

12.     No Partnership or Joint Venture.

Nothing contained in this note or elsewhere shall be construed as creating a partnership or joint venture between Lender and Borrower or between Lender and any other person or as causing the Lender of the note to be responsible in any way for the debts or obligations of Borrower or any other person.

13.   Interest Rate Limitation.

Notwithstanding anything contained herein to the contrary, the Lender hereof shall never be entitled to collect or apply as interest on this obligation any amount in excess of the maximum rate of interest permitted to be charged by applicable law. If the Lender of this note ever collects or applies as interest any such excess, the excess amount shall be applied to reduce the principal debt; and if the principal debt is paid in full, any remaining excess shall be paid forthwith to Borrower. In determining whether the interest paid or payable in any specific case exceeds the highest lawful rate, the Lender and Borrower shall to the maximum extent permitted under applicable law (a) characterize any nonprincipal payment as an expense, fee, or premium rather than as interest; (b) exclude voluntary prepayments and the effects of these; and (c) spread the total amount of interest throughout the entire contemplated term of the obligation so that the interest rate is uniform throughout the term. Nothing in this paragraph shall be considered to increase the total dollar amount of interest payable under this note.

14.   Modification.

In the event that this note is pledged or collaterally assigned by Lender at any time or from time to time before the maturity date, neither Borrower nor Lender shall permit any modification of this note without the consent of the pledgee/assignee.

15.   Number and Gender.

In this note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa, if the context so requires.

16.   Headings.

Headings at the beginning of each numbered paragraph of this note are intended solely for convenience of reference and are not to be construed as being a part of the note.

17.   Time of Essence.

Time is of the essence with respect to every provision of this note.

18.   Governing Law.

This note shall be construed and enforced in accordance with the laws of the state of Florida, except to the extent that federal laws preempt the laws of the state of Florida.

19.   WAIVER OF JURY TRIAL.  AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN EVIDENCED HEREBY, LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS Third Consolidated RENEWAL REVOLVING CONSTRUCTION LOAN MORTGAGE NOTE, THE LOAN EVIDENCED HEREBY, ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED HEREBY, AND ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

**IN WITNESS WHEREOF,** Borrower has executed this promissory note on the date set forth above.

Apadana Investments, Inc., a Florida corporation

By: _____
Hormuz Khosravi
Its Vice President

State documentary stamps taxes in the amount of S8,400.00 have been paid on and affixed to the mortgage.

Page 6 of 6

"DOC645030920001287811000091802900000000"



# REGIONS

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App# | Loan No. | Account | Officer |
|-----------|-----------|----------|-----------|----------|---------|---------|
| $2,066,666.75 | 05-15-2008 | 11-15-2008 | 092 | 000128781000091802 | 000128781 | JPM04 |

References in the shaded lines are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** APADANA INVESTMENTS INC. (TIN:
20-9982375)
3265 FRONT ROAD
JACKSONVILLE, FL 32257

**Lender:** REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FL.JV602830
JACKSONVILLE, FL 32202

---

**Principal Amount: $2,066,666.75**  **Date of Note: May 15, 2008**

**PROMISE TO PAY.** APADANA INVESTMENTS INC. ("Borrower") promises to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Sixty-six Thousand Six Hundred Sixty-six & 75/100 Dollars ($2,066,666.75), together with interest on the unpaid principal balance from May 15, 2008, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

Borrower will pay the interest due on this Note in monthly installments. The first monthly installment of interest will be due on 06-15-2008, and the remaining installments will be due on the same day of every month thereafter until this Note has been paid in full. If not sooner paid, Borrower will pay the principal amount of this Note, together with any unpaid interest, in full on 11-15-2008.

Unless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then principal, then late charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time without notice to Borrower. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the London Interbank Offered Rate (as defined below) for the applicable Interest Period (as defined below), (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The interest rate to be applied to the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 2224 Birmingham, AL 35246.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

EXHIBIT "B"

## PROMISSORY NOTE
### (Continued)

Loan No: 0001287811000918029                                                                 Page 2

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**CREDITING OF PAYMENTS (LIBOR CREDITING OF PAYMENTS).** Payments received after Lender cut-off times established from time to time or on weekends or bank holidays will be credited as of the next Business Day.

**DEFINITION RELATING TO INDEX (LIBOR 1 MONTH).** As used in this Note, the following capitalized terms will have the meanings indicated:

"Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business.

"Interest Period" means, with respect to the initial Interest Period hereunder, the period commencing on the date of the Note and, with respect to any subsequent Interest Period hereunder, the period commencing on the last day of the immediately preceding Interest Period, and in any case ending on the day numerically corresponding to the date of the Note in the first month thereafter; provided that any Interest Period which begins on a day of a calendar month for which there is no numerically corresponding day in the appropriate subsequent calendar month shall end on the last day of the appropriate subsequent calendar month.

"LIBOR Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business and on which dealings in U.S. dollar deposits are carried out in the London interbank market.

"London Interbank Offered Rate" means, with respect to any Interest Period, the rate for deposits in U.S. dollars for a period comparable to the term of such Interest Period which appears on Reuters Screen LIBOR01 Page as of 11:00 a.m., London, England time on the day (the "Pricing Date") that is two LIBOR Business Days preceding the first day of such Interest Period, as such rate is published on the Business Day next following the Pricing Date in the Money Market Section of the Wall Street Journal. If such rate cannot be so determined for any reason, Lender will request the principal London office of at least two banks to provide a quotation of its rate for deposits in U.S. dollars for a period comparable to the applicable Interest Period and the rate for such Interest Period will be the arithmetic mean of such quotations.

**PRIOR NOTE.** This note is made and executed for the purpose of continuing, modifying and amending the terms of that certain promissory note in the principal amount of $2,093,333.41, dated 03-11-2005, executed by the Borrower and payable to the Bank or its predecessor or assignor. This note shall constitute a true modification or amendment of the terms of the original note which original note shall continue in full force and effect except as specifically modified herein. This note shall not constitute a novation, payment in full or satisfaction of the original note, nor shall this note in any other way supersede the original note or any of the Loan Documents. This note shall continue to be secured by any and all collateral securing the original note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

APADANA INVESTMENTS INC.

By: _____
BAHMAN   VENUS,   PRESIDENT   of   APADANA
INVESTMENTS INC.

# PROMISSORY NOTE

$2,162,000.00

Jacksonville, Florida
February 28, 2006

### 1.  Principal.

FOR VALUE RECEIVED, the undersigned, Apadana Investments, Inc., a Florida corporation ("Borrower"), whose address is 824 Waterman Road South, Jacksonville, Florida 32207, promises to pay to AmSouth Bank ("Lender"), whose address is 51 W. Bay Street, Jacksonville, Florida 32202, the principal sum of Two Million One Hundred Sixty-Two Thousand Dollars ($2,162,000.00), with annual interest thereon calculated in accordance with the terms and provisions provided below. All sums owing under this note are payable in lawful money of the United States of America.

### 2.  Interest.

From date hereof interest shall accrue on the principal balance outstanding under this note at a variable rate equal to two hundred (200) basis points (2.00%) above the LIBOR rate, as determined from time to time, until this note is paid in full. Interest calculations shall be based on a 360-day year and charged on the basis of actual days elapsed. The determination of the LIBOR rate is more particularly described as follows:

A per annum rate equal to the rate per annum offered by prime banks in the London interbank eurodollar market for deposits in United States dollars having a one (1) month maturity, as determined by Lender with reference to the financial information reporting service used by Lender at the time of such determination (the "LIBOR Rate") plus 2.00%. This rate is subject to change on March 28, 2006, and will be subject to change on the same day of every month thereafter (the "Change Date"). The interest rate change is based on changes in the LIBOR Rate. The Lender will determine the LIBOR Rate that will be in effect as of the Change Date; however, if the Change Date is not a Business Day, then the Lender will determine the LIBOR Rate that will be in effect as of the Business Day immediately following the Change Date. Changes in the interest rate on the Loan will be effective as of the Change Date. As used herein, "Business Day" means a day of the year on which banks are not required or authorized to close in Birmingham, Alabama, and a day in which dealings are carried on in the London interbank eurodollar market.

As used herein, "LIBOR Reserve Requirements" means the maximum reserves (whether basic, supplemental, marginal, emergency, or otherwise) prescribed by the Board of Governors of the Federal Reserve System (or any successor) with respect to liabilities or assets consisting of or including "Eurocurrency liabilities" (as defined in Regulation D of the Board of Governors of the Federal Reserve System). If there is any change in LIBOR Reserve Requirements, then Borrower shall, from time to time upon demand by Lender, pay to Lender such additional amounts as Lender may deem necessary to compensate Lender for any increased costs resulting from such change. Borrower agrees that Lender's determination of such additional and increased costs will be made in Lender's sole discretion and shall be conclusive. If, because of the introduction of or any change in, or because of any judicial, administrative, or other governmental interpretation of, any applicable law or regulation, there shall be any increased in the

EXHIBIT "C"

cost to Lender of making, funding, maintaining, or allocating capital to any amount outstanding under the Loan bearing interest at a rate based on the LIBOR Rate, then Borrower shall, from time to time upon demand by Lender, pay to Lender additional amounts sufficient to compensate Lender for such increased costs.

If, because the introduction of or any change in, or because of any judicial, administrative, or other governmental interpretation of, any applicable law or regulation, it becomes unlawful for Lender to make, fund, or maintain any such advance or balance at a rate based on the LIBOR Rate, then Lender's obligation to make, fund, or maintain any such advance or balance shall terminate and any such affected outstanding advance or balance shall bear interest at a rate equal to the prime rate of Lender in effect from time to time as designated by Lender (the "Prime Rate") plus 0%, with changes in such interest rate to take effect as the Prime Rate changes. The Prime Rate is merely a reference rate and is not necessarily the best or lowest rate offered by Lender.

3.   Monthly Installments of Principal and Interest and Maturity Date.   Principal and interest shall become due and payable on the dates and in the manner as follows:

Monthly Installments of Principal Plus Interest. Successive installments of principal in the fixed amount of **$12,011.11** (based on a 15 year amortization) , plus payments of interest on the amount of the unpaid principal balance shall be due and payable monthly, commencing on the 28th day of **March, 2006**, and continuing on the same day of each successive month next thereafter until and including **February 28, 2011**, at which time the entire unpaid principal balance, together with any accrued and unpaid interest, is due and payable in full (the " maturity date").

Each payment will be applied to interest before principal.

All amounts required to be paid under Lender's note shall be payable at Lender's office located at **51 W. Bay Street, Jacksonville, Florida 32202**, or at another place as Lender, from time to time, may designate in writing.

4.   Security.

a.   This note is secured by, among other things, a mortgage and security agreement ("mortgage") bearing the date of this note, executed and delivered by Borrower, as mortgagor, to Lender, as mortgagee, encumbering property in St. Johns County, Florida, as more fully described in the Mortgage.

b.   This note is further secured by additional collateral documentation, including assignments and guarantees ("security documents"), which were executed and delivered to Lender on the date of this note.

c.   All of the agreements, conditions, covenants, provisions, and stipulations contained in the mortgage and security documents that are to be kept and performed by Borrower and any guarantors of the note, are made hereby a part of this note to the same extent and with the same force and effect as if they were set forth fully herein, and Borrower covenants and agrees to keep and perform them or cause them to be kept and performed strictly in accordance with their terms.

5.   Prepayment. Borrower may prepay the whole or any portion of this note on any date, on five days' notice to Lender without penalty.

IMAGED_03132006

Any payments of the principal sum received by Lender under the terms of this note shall be applied in the following order of priority: (a) first, to any accrued interest; (b) second, to any late charges or other expenses; and (c) third, to the outstanding principal sum.

6.   Late Charge.

If any required payment, including the final payment due on the maturity date, is not paid within fifteen (15) days from and including the date on which it was due (whether by acceleration or otherwise) (except for the payment due on the maturity date of which there is no grace period), then, in each such event, all past due amounts shall be subject to a late penalty of five cents on every dollar owed (the "late penalty"). This late penalty shall be in addition to any other interest due as provided in Paragraph 2 and in addition to all other rights and remedies provided herein or by law for the benefit of the Lender on a default. The acceptance of any payment by the Lender of the note shall not act to restrict the Lender at all in exercising any other rights under the note or the law, to waive or release Borrower from any obligations contained herein, or to extend the time for payments due under this note.

7.   Default and Remedies.

If Borrower fails to pay principal and/or interest on the date on which it falls due or to perform any of the agreements, conditions, covenants, provisions, or stipulations contained in this note, in the mortgage, or in the security documents, then Lender, at its option and without notice to Borrower, may declare immediately due and payable the entire unpaid balance of principal with interest from the date of default at the highest rate permitted by law and all other sums due by Borrower hereunder or under the mortgage, anything herein or in the mortgage to the contrary notwithstanding. Payment of this sum may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Lender in this note, in the mortgage, or in the security documents. In that case, Lender also may recover all costs in connection with suit, a reasonable attorney's fee for collection, and interest on any judgment obtained by Lender at the highest rate permitted by law.

The remedies of Lender and the warrants provided in this note, the mortgage, or the security documents shall be cumulative and concurrent, and they may be pursued singularly, successively, or together at the sole discretion of Lender. They may be exercised as often as occasion shall occur, and failing to exercise one shall in no event be construed as a waiver or release of it.

8.   Attorneys' Fees and Costs.

If Lender engages any attorney to enforce or construe any provision of this note, in the mortgage, or in the security documents, or as a consequence of any default whether or not any legal action is filed, Borrower immediately shall pay on demand all reasonable attorneys' fees and other Lender's costs, together with interest from the date of demand until paid at the highest rate of interest then applicable to the unpaid principal, as if the unpaid attorneys' fees and costs had been added to the principal.

9.   Waivers.

a.   Borrower hereby waives and releases all benefit that might accrue to Borrower by virtue of any present or future laws of exemption with regard to real or personal property or any part of the proceeds arising from any sale of that property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment. Borrower agrees that any real estate that may be levied on under a judgment obtained

by virtue hereof, on any writ of execution issued thereon, may be sold on any writ in whole or in part in any order desired by Lender.

b.   Borrower and all endorsers, sureties, and guarantors jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this note. They agree that each shall have unconditional liability without regard to the liability of any other party and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender. Borrower and all endorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, endorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder.

c.   Lender shall not be considered by any act of omission or commission to have waived any of its rights or remedies hereunder, unless the waiver is in writing and signed by Lender, and then only to the extent specifically set forth in writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

10.   Notices.

All notices required under or in connection with this note shall be delivered or sent by certified or registered mail, return receipt requested, postage prepaid, to the addresses set forth in Paragraph 1 hereof, or to another address that any party may designate from time to time by notice to the others in the manner set forth herein. All notices shall be considered to have been given or made either at the time of delivery thereof to an officer or employee or on the third business day following the time of mailing in the aforesaid manner.

11.   Costs and Expenses.

Borrower shall pay the cost of any revenue tax or other stamps now or hereafter required by law at any time to be affixed to this note.

12.   No Partnership or Joint Venture.

Nothing contained in this note or elsewhere shall be construed as creating a partnership or joint venture between Lender and Borrower or between Lender and any other person or as causing the Lender of the note to be responsible in any way for the debts or obligations of Borrower or any other person.

13.   Interest Rate Limitation.

Notwithstanding anything contained herein to the contrary, the Lender hereof shall never be entitled to collect or apply as interest on this obligation any amount in excess of the maximum rate of interest permitted to be charged by applicable law. If the Lender of this note ever collects or applies as interest any such excess, the excess amount shall be applied to reduce the principal debt; and if the principal debt is paid in full, any remaining excess shall be paid forthwith to Borrower. In determining whether the interest paid or payable in any specific case exceeds the highest lawful rate, the Lender and Borrower shall to the maximum extent permitted under applicable law (a) characterize any nonprincipal payment as an expense, fee, or premium rather than as interest; (b)

exclude voluntary prepayments and the effects of these; and (c) spread the total amount of interest throughout the entire contemplated term of the obligation so that the interest rate is uniform throughout the term. Nothing in this paragraph shall be considered to increase the total dollar amount of interest payable under this note.

14.   Modification.

In the event that this note is pledged or collaterally assigned by Lender at any time or from time to time before the maturity date, neither Borrower nor Lender shall permit any modification of this note without the consent of the pledgee/assignee.

15.   Number and Gender.

In this note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa, if the context so requires.

16.   Headings.

Headings at the beginning of each numbered paragraph of this note are intended solely for convenience of reference and are not to be construed as being a part of the note.

17.   Time of Essence.

Time is of the essence with respect to every provision of this note.

18.   Governing Law.

This note shall be construed and enforced in accordance with the laws of the state of Florida, except to the extent that federal laws preempt the laws of the state of Florida.

19.   WAIVER OF JURY TRIAL. AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN EVIDENCED HEREBY, LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS Third Consolidated RENEWAL REVOLVING CONSTRUCTION LOAN MORTGAGE NOTE, THE LOAN EVIDENCED HEREBY, ALL DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THE LOAN EVIDENCED HEREBY, AND ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

IN WITNESS WHEREOF, Borrower has executed this promissory note on the date set forth above.

Apadana Investments, Inc., a Florida corporation

By: _____
     Bahman Venus
     Its President

State documentary stamps taxes in the amount of $7,567.00 have been paid on and affixed to the mortgage.

"DOC645030620001287811000100925700000000"


# REGIONS

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|-----------|-----------|----------|----------|---------|---------|---------|
| $2,152,494.11 | 05-15-2008 | 12-15-2009 | 092 | 0001287811000100925X | 0001287811 | JPM04 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** APADANA INVESTMENTS INC. (TIN: 20-0982375)
3265 FRONT ROAD
JACKSONVILLE, FL 32257

**Lender:** REGIONS BANK
JACKSONVILLE: PRIVATE BANKING
4655 SALISBURY RD
FL/VB62830
JACKSONVILLE, FL 32216

**Principal Amount: $2,152,494.11**                   **Date of Note: May 15, 2008**

**PROMISE TO PAY.** APADANA INVESTMENTS INC. ("Borrower") promises to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million One Hundred Fifty-two Thousand Four Hundred Ninety-four & 11/100 Dollars ($2,152,494.11), together with interest on the unpaid principal balance from May 15, 2008, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

Borrower will pay the interest due on this Note in monthly installments. The first monthly installment of interest will be due on 06-15-2008, and the remaining installments will be due on the same day of every month thereafter until this Note has been paid in full. If not sooner paid, Borrower will pay the principal amount of this Note, together with any unpaid interest, in full on 12-15-2009.

Unless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then principal, then late charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time without notice to Borrower. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the London Interbank Offered Rate (as defined below) for the applicable Interest Period (as defined below), (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The interest rate to be applied to the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.750 percentage points over the Index. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 2224 Birmingham, AL 35246.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

EXHIBIT "D"

## PROMISSORY NOTE
### (Continued)

Loan No: 00012878110001009257                                                                 Page 2

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**CREDITING OF PAYMENTS (LIBOR CREDITING OF PAYMENTS).** Payments received after Lender cut-off times established from time to time or on weekends or bank holidays will be credited as of the next Business Day.

**DEFINITION RELATING TO INDEX (LIBOR 1 MONTH).** As used in this Note, the following capitalized terms will have the meanings indicated:

"Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business.

"Interest Period" means, with respect to the initial Interest Period hereunder, the period commencing on the date of the Note and, with respect to any subsequent Interest Period hereunder, the period commencing on the last day of the immediately preceding Interest Period, and in any case ending on the last day numerically corresponding to the date of the Note in the first month thereafter; provided that any Interest Period which begins on a day of a calendar month for which there is no numerically corresponding day in the appropriate subsequent calendar month shall end on the last day of the appropriate subsequent calendar month.

"LIBOR Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business and on which dealings in U.S. dollar deposits are carried out in the London interbank market.

"London Interbank Offered Rate" means, with respect to any Interest Period, that rate for deposits in U.S. dollars for a period comparable to the term of such Interest Period which appears on Reuters Screen LIBOR01 Page as of 11:00 a.m., London, England time on the day (the "Pricing Date") that is two LIBOR Business Days preceding the first day of such Interest Period, as such rate is published for any reason, Lender following the Pricing Date in the Money Market Section of the Wall Street Journal. If such rate cannot be so determined for any reason, Lender will request the principal London office of at least two banks to provide a quotation of its rate for deposits in U.S. dollars for a period comparable to the applicable Interest Period and the rate for such Interest Period will be the arithmetic mean of such quotations.

**PRIOR NOTE.** This note is made and executed for the purpose of continuing, modifying and amending the terms of that certain promissory note in the principal amount of $2,162,000.00, dated 02-26-2008, executed by the Borrower and payable to the Bank or its predecessor or assignor. This note shall constitute a true modification or amendment of the terms of the original note which original note shall continue in full force and effect except as specifically modified herein. This note shall not constitute a novation, payment in full or satisfaction of the original note, nor shall this note in any other way supersede the original note or any of the Loan Documents. This note shall continue to be secured by any and all collateral securing the original note.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**APADANA INVESTMENTS INC.**

By: _____
   BAHMAN VENUS, PRESIDENT  of  APADANA
   INVESTMENTS INC.

LASER PRO Lending, Ver. 5.41.00.001 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - FL  R:\CFI\LPL\D20.FC  TR-10307  PR-2459

"DOC6450309225800375340001815510000000"

# ◆ REGIONS

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App | Loan No. | Account | Officer |
|-----------|-----------|----------|----------|----------|---------|---------|
| $700,000.00 | 05-02-2008 | 05-01-2009 | 092 | 25800373400011815511 | 25800373534 | JPM04 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  APADANA INVESTMENTS INC (TIN: 20-0982375)
319 10TH AVE N
JACKSONVILLE BEACH, FL 32250

**Lender:**  REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FL/JV60283O
JACKSONVILLE, FL 32202

---

**Principal Amount: $700,000.00**                                        **Date of Note: May 2, 2008**

**PROMISE TO PAY.** APADANA INVESTMENTS INC ("Borrower") promises to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Thousand & 00/100 Dollars ($700,000.00), together with interest on the unpaid principal balance from May 2, 2008, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

Borrower will pay the interest due on this Note in monthly installments. The first monthly installment of interest will be due on 06-02-2008, and the remaining installments will be due on the same day of every month thereafter until this Note has been paid in full. If not sooner paid, Borrower will pay the principal amount of this Note, together with any unpaid interest, in full on 05-01-2009.

Unless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then principal, then late charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time without notice to Borrower. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the London Interbank Offered Rate (as defined below) for the applicable Interest Period (as defined below), (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on oth   rates as well. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.750 percentage points over the Index. NOTICE: Under no circumstances will the effective rate of interest on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 216 Birmingham, AL 35201.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15)

EXHIBIT "E"

# PROMISSORY NOTE
## (Continued)

Loan No: 25800375340001181551                                                                 Page 2

days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**CREDITING OF PAYMENTS (LIBOR CREDITING OF PAYMENTS).** Payments received after Lender cut-off times established from time to time or on weekends or bank holidays will be credited as of the next Business Day.

**DEFINITION RELATING TO INDEX (LIBOR 1 MONTH).** As used in this Note, the following capitalized terms will have the meanings indicated:

"Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business.

"Interest Period" means, with respect to the initial Interest Period hereunder, the period commencing on the date of this Note and, with respect to any subsequent Interest Period hereunder, the period commencing on the last day of the immediately preceding Interest Period, and in any case ending on the day numerically corresponding to the date of the Note in the first month thereafter; provided that any Interest Period which begins on a day of a calendar month for which there is no numerically corresponding day in the appropriate subsequent calendar month shall end on the last day of the appropriate subsequent calendar month.

"LIBOR Business Day" means a day on which the office of the Lender at which payments under this Note are to be made is open for business and on which dealings in U.S. dollar deposits are carried out in the London interbank market.

"London Interbank Offered Rate" means, with respect to any Interest Period, the rate for deposits in U.S. dollars for a period comparable to the term of such Interest Period which appears on Reuters Screen LIBOR01 Page as of 11:00 a.m., London; England time on the day (the "Pricing Date") that is two LIBOR Business Days preceding the first day of such Interest Period, as such rate is published on the Business Day next following the Pricing Date in the Money Market Section of the Wall Street Journal. If such rate cannot be so determined for any reason, Lender will request the principal London office of at least two banks to provide a quotation of its rate for deposits in U.S. dollars for a period comparable to the applicable Interest Period and the rate for such Interest Period will be the arithmetic mean of such quotations.

**FLAT FEES.** The Borrower will pay a loan fee in the amount of $250.00. This fee will be paid on 05-02-2008 or Annually.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

APADANA INVESTMENTS INC

By: _____
   BAHMAN VENUS

 **REGIONS**

Date: November 23, 2009

> Re:   Loan to Apadana Investments Inc (the "Borrower"), dated, 03/11/05, in the
> Original Principal Amount of $2,066,666.75; Loan Account No.1287811 (the
> "Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from 11/15/2009 (the "Old Maturity") to 02/15/2010 (the "New Maturity"), subject to the following terms and conditions:

1. We must receive payment in full of all accrued and unpaid interest in the amount of $3,550.36 and all unpaid late fees and other charges in the amount of $.00, which amounts are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from the date of this letter.

2. We must receive a copy of this letter, executed by Borrower in the space provided below, by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is $2,066,666.75, with accrued and unpaid interest, late fees and other charges in the amounts shown above. Borrower further covenants, represents and warrants that, as of the date Borrower executes this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver of any terms or provisions of any documents executed or delivered in connection with the Loan), Borrower hereby releasing any such defenses, claims, *etc.* Borrower agrees to execute such other instruments or documents as we may reasonably request in order to further document the New Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation with regard to the Loan, and except as expressly modified by this letter, all terms, conditions, and provisions of the Loan (including, without limitation, Borrower's obligation to make monthly payments of interest, or principal and interest, as the terms of the Loan documents may provide), and all documents and instruments evidencing the Loan, remain and continue in full force and effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to further extend the maturity date, upon the New Maturity, and we have not waived any, and we reserve all of, our rights and remedies under any and all of the Loan documents with respect to any existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: _TREASURER Apadana Inv. Inc._

Date: _11/23/2009_

Borrower

By: _____

Title: _VP PRIVATE BANK CLIENT MGR_

Date: _11-23-09_

Extension Letter.dot
03/2008

EXHIBIT "F"

 **REGIONS**          0001287811/0000918029

Date: March 25, 2010

Re:   Loan to Apadana Investments Inc (the "Borrower"), dated 03/11/05, in the
Original Principal Amount of $2,066,666.75; Loan Account No.0001287811
(the "Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from
02/15/2010 (the "Old Maturity") to 05/15/2010 (the "New Maturity"), subject to the following
terms and conditions:

1.   We must receive payment in full of all accrued and unpaid interest in the amount of
$3,183.68 and all unpaid late fees and other charges in the amount of $.00, which amounts
are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from
the date of this letter.

2.   We must receive a copy of this letter, executed by Borrower in the space provided below,
by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$2,066,666.75, with accrued and unpaid interest, late fees and other charges in the amounts shown
above.  Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, etc.  Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect.  This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: PRIVATE BANK CLIENT MGR, VP

Date: 3-25-10

Borrower

By: _____

Title: as Treasurer of P Padana Inv. Inc

Date: 3-25-10

Extension Letter.dot
03/2008

EXHIBIT "G"

 REGIONS

Date: December 14, 2009

Re:  Loan to Apadana Investments Inc. (the "Borrower"), dated 02/28/2006 , in the Original Principal Amount of $2,152,494.11; Loan Account No.1287811 (the "Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from 12/15/2009 (the "Old Maturity") to 02/15/2010 (the "New Maturity"), subject to the following terms and conditions:

1. We must receive payment in full of all accrued and unpaid interest in the amount of $ .00 and all unpaid late fees and other charges in the amount of $ .00, which amounts are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from the date of this letter.

2. We must receive a copy of this letter, executed by Borrower in the space provided below, by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is $2,152,494.11, with accrued and unpaid interest, late fees and other charges in the amounts shown above. Borrower further covenants, represents and warrants that, as of the date Borrower executes this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver of any terms or provisions of any documents executed or delivered in connection with the Loan), Borrower hereby releasing any such defenses, claims, etc. Borrower agrees to execute such other instruments or documents as we may reasonably request in order to further document the New Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation with regard to the Loan, and except as expressly modified by this letter, all terms, conditions, and provisions of the Loan (including, without limitation, Borrower's obligation to make monthly payments of interest, or principal and interest, as the terms of the Loan documents may provide), and all documents and instruments evidencing the Loan, remain and continue in full force and effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to further extend the maturity date, upon the New Maturity, and we have not waived any, and we reserve all of, our rights and remedies under any and all of the Loan documents with respect to any existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: VICE PRESIDENT

Date: 12-14-09

Borrower

By: _____

Title: Treasurer, Apadana Inv. Group,

Date: 12/14/09

EXHIBIT "H"

 **REGIONS**

Date: March 25, 2010                    0001287811/0001009257

Re:    Loan to Apadana Investments Inc (the "Borrower"), dated 02/28/2006, in the
       Original Principal Amount of $2,152,494.11; Loan Account No.0001287811
       (the "Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from
02/15/2010 (the "Old Maturity") to 05/15/2010 (the "New Maturity"), subject to the following
terms and conditions:

1.  We must receive payment in full of all accrued and unpaid interest in the amount of
    $3,315.90 and all unpaid late fees and other charges in the amount of $.00, which amounts
    are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from
    the date of this letter.

2.  We must receive a copy of this letter, executed by Borrower in the space provided below,
    by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$2,152,494.11, with accrued and unpaid interest, late fees and other charges in the amounts shown
above. Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, *etc.* Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: VP PRIVATE CLIENT MGR

Date: 3-25-10

Borrower

By: _____

Title: Treasurer for Apadana Inv. Inc

Date: 3-25-10

Extension Letter.dot
03/2008

EXHIBIT "T"

 **REGIONS**

Date: May 29, 2009

> Re:   Loan to Apadana Investments, Inc. (the "Borrower"), dated May 02, 2008, in
> the Original Principal Amount of $700,000.00; Loan Account
> No.2580037534/0001181551 (the "Loan")

Dear Drs. Venus, Samiian, Khosravi, Ramazani:

This letter confirms our agreement to extend the maturity date for this Loan from May 01,
2009 (the "Old Maturity") to August 01, 2009 (the "New Maturity"), subject to the following
terms and conditions:

1. We must receive payment in full of all accrued and unpaid interest in the amount of
   $2,512.84 and all unpaid late fees and other charges in the amount of $.00, which amounts
   are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from
   the date of this letter.

2. We must receive a copy of this letter, executed by Borrower in the space provided below,
   by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$700,000.00, with accrued and unpaid interest, late fees and other charges in the amounts shown
above. Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, etc. Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: PRIVATE BANK RM VP

Date: 5-29-09

Borrower

By: _____

Title: Partner To Inc) Apadana

Date: 5-29-09

EXHIBIT "J"

 **REGIONS**

Date: 08/05/2009

Re:   Loan to Apadana Investments Inc. (the "Borrower"), dated May 02, 2008, in
the Original Principal Amount of $700,000.00; Loan Account
No.2580037534/0001181551 (the "Loan")

Dear Dr. Samiian, Khosravi and Ramazani:

This letter confirms our agreement to extend the maturity date for this Loan from
August 01, 2009 (the "Old Maturity") to November 01, 2009 (the "New Maturity"), subject to
the following terms and conditions:

1.  We must receive payment in full of all accrued and unpaid interest in the amount of
$1,230.71 and all unpaid late fees and other charges in the amount of $.00, which amounts
are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from
the date of this letter.

2.  We must receive a copy of this letter, executed by Borrower in the space provided below,
by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$700,000.00, with accrued and unpaid interest, late fees and other charges in the amounts shown
above. Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, etc. Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: PRIVATE CLIENT MANAGER

Date: 8-05-09

Borrower

By: M. R. Samiian

Title: Treasurer / Secretary, Apadana Inv. Inc

Date: 08-05-2009

Extension Letter.dot
03/2008

EXHIBIT "K"

 REGIONS

**Date: November 23, 2009**

Re:  Loan to Apadana Investments Inc (the "Borrower"), dated, 05/02/08, in the
Original Principal Amount of $700,000.00; Loan Account No.2580037534 (the
"Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from
11/01/2009 (the "Old Maturity") to 02/01/2010 (the "New Maturity"), subject to the following
terms and conditions:

1. We must receive payment in full of all accrued and unpaid interest in the amount of
$1,160.15 and all unpaid late fees and other charges in the amount of $.00, which amounts
are outstanding on the Loan as of the date of this letter, by no later than ten (10) days from
the date of this letter.

2. We must receive a copy of this letter, executed by Borrower in the space provided below,
by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$700,000.00, with accrued and unpaid interest, late fees and other charges in the amounts shown
above. Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, *etc.* Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: _____

Date: __11/23/2009__

Borrower

By: _____

Title: __VP PRIVATE BANK CLIENT MGR__

Date: __4-23-09__

Extension Letter.dot
03/2008

EXHIBIT "L"

 **REGIONS**

Date: March 25, 2010                              2580037534/0001181551

Re:   Loan to Apadana Investments Inc (the "Borrower"), dated 05/02/08, in the
Original Principal Amount of $700,000.00; Loan Account No.2580037534 (the
"Loan")

Dear Dr. Samiian:

This letter confirms our agreement to extend the maturity date for this Loan from
02/01/2010 (the "Old Maturity") to 05/01/2010 (the "New Maturity"), subject to the following
terms and conditions:

1. We must receive payment in full of all accrued and unpaid interest in the amount of $.00
and all unpaid late fees and other charges in the amount of $.00, which amounts are
outstanding on the Loan as of the date of this letter, by no later than ten (10) days from the
date of this letter.

2. We must receive a copy of this letter, executed by Borrower in the space provided below,
by no later than ten (10) days from the date of this letter.

If Borrower should fail to satisfy any of the conditions listed above, the New Maturity
shall be null and void, and the Old Maturity shall be deemed to be full force and effect.

By executing this letter below, Borrower affirms the indebtedness owed to us regarding the
Loan and agrees that as of the date of this letter the outstanding principal balance on the Loan is
$700,000.00, with accrued and unpaid interest, late fees and other charges in the amounts shown
above. Borrower further covenants, represents and warrants that, as of the date Borrower executes
this letter, Borrower has no defenses, setoffs, rights of recoupment, counterclaims or claims of any
nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud,
misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver
of any terms or provisions of any documents executed or delivered in connection with the Loan),
Borrower hereby releasing any such defenses, claims, etc. Borrower agrees to execute such other
instruments or documents as we may reasonably request in order to further document the New
Maturity.

This letter is not intended to be, and shall not be deemed or construed to be, a novation
with regard to the Loan, and expect as expressly modified by this letter, all terms, conditions, and
provisions of the Loan (including, without limitation, Borrower's obligation to make monthly
payments of interest, or principal and interest, as the terms of the Loan documents may provide),
and all documents and instruments evidencing the Loan, remain and continue in full force and
effect. This letter constitutes no obligation on our part to renew or refinance the Loan, or to
further extend the maturity date, upon the New Maturity, and we have not waived any, and we
reserve all of, our rights and remedies under any and all of the Loan documents with respect to any
existing or future default, whether known or unknown to us.

Sincerely,

Regions Bank

By: _____

Title: VP CLIENT MGR

Date: 3-25-10

Borrower

By: _____

Title: As Treasurer of Apadana Inv. Inc

Date: 3-25-10

Extension Letter.dot
03/2008

EXHIBIT "M"

"DOC155030922580037534000118155100000000"



## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Bank/App | Loan No. | Account | Office |
|-----------|-----------|----------|----------|----------|---------|--------|
| | | | | | | JPM04 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "******" has been omitted due to text length limitations.

**Borrower:**  APADANA INVESTMENTS INC (TIN: 26-0982375)
319 16TH AVE N
JACKSONVILLE BEACH, FL 33250

**Lender:**  REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FLJVS02830
JACKSONVILLE, FL 32202

**Guarantor:**  MOHAMAD R. SAMIAN (SSN: 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)
9134 BEAUCIERC CIRCLE W
JACKSONVILLE, FL 32257

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established

EXHIBIT "N"

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 25800375340001181551                                                          Page 2

adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any Collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower or Guarantor named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on

## COMMERCIAL GUARANTY
### (Continued)

| | | |
|---|---|---|
| Loan No: 25800375340001181551 | | Page 3 |

their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**CONSTRUCTION WITH OTHER GUARANTIES.** No guaranty hereafter executed and delivered with respect to any liability, obligation or debt of Borrower to Lender shall be construed or deemed (i) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to either this Guaranty or any Related Document, or (ii) to alter or amend this Guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under this Guaranty, unless such guaranty, or another written instrument signed by Lender, so provides by express reference to this Guaranty.

In addition, this Guaranty shall not be construed or deemed (a) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to any guaranty now existing with respect to any liability, obligation or debt of Borrower to Lender, or (ii) to alter or amend any such guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under any such guaranty.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means APADANA INVESTMENTS INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation MOHAMAD R. SAMIIAN, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 2, 2008.**

GUARANTOR:

MOHAMAD R. SAMIIAN

By: _____
  MOHAMAD R. SAMIIAN

LASER PRO Lending, Ver. 5.38.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - FL  d:\CFI\LPL\E20.FC  TR-54888  PR-CRE1

*DOC15503092258003753400011815510000000*

REGIONS

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|---|---|---|---|---|---|---|
| | | | 092 | | | JPM04 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** APADANA INVESTMENTS INC (TIN: 20-0982375)
319 10TH AVE N
JACKSONVILLE BEACH, FL 32250

**Lender:** REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FLJV60283O
JACKSONVILLE, FL 32202

**Guarantor:** BAHMAN VENUS (SSN: 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)
319 10TH AVE N
JACKSONVILLE BEACH, FL 32250

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established

EXHIBIT "O"

# COMMERCIAL GUARANTY
## (Continued)

adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 2580037534000118155 1                                                      Page 3

their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**CONSTRUCTION WITH OTHER GUARANTIES.** No guaranty hereafter executed and delivered with respect to any liability, obligation or debt of Borrower to Lender shall be construed or deemed (i) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to either this Guaranty or any Related Document, or (ii) to alter or amend this Guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under this Guaranty, unless such guaranty, or another written instrument signed by Lender, so provides by express reference to this Guaranty.

In addition, this Guaranty shall not be construed or deemed (a) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to any guaranty now existing with respect to any liability, obligation or debt of Borrower to Lender, or (ii) to alter or amend such guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under any such guaranty.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means APADANA INVESTMENTS INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation BAHMAN VENUS, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 2, 2008.

GUARANTOR:

BAHMAN VENUS

By: _____
BAHMAN VENUS

"DOC15S03092258003TS340001181551000000"



## REGIONS

### COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Bank/App.1992 | Loan No. | Account | Officer JFM04 |
|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** APADANA INVESTMENTS INC (TIN: 20-0982375)
319 10TH AVE N
JACKSONVILLE BEACH, FL 32250

**Lender:** REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FLJV602830
JACKSONVILLE, FL 32202

**Guarantor:** HORMORZ KHOSRAVI (SSN: 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)
3255 FRONT RD
JACKSONVILLE, FL 32217

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other undetermined guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that: (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established

EXHIBIT "P"

**COMMERCIAL GUARANTY**
(Continued)

| Loan No: 2580037534000181551 | | Page 2 |

adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Arbitration. Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for those purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor shall also pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of laws provisions.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower or Guarantor named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 25800375340001181551                                                    Page 3

their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**CONSTRUCTION WITH OTHER GUARANTEES.** No guaranty hereafter executed and delivered with respect to any liability, obligation or debt of Borrower to Lender shall be construed or deemed (i) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to either this Guaranty or any Related Document, or (ii) to alter or amend this Guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under this Guaranty, unless such guaranty, or another written instrument signed by Lender, so provides by express reference to this Guaranty.

In addition, this Guaranty shall not be construed or deemed (a) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to any guaranty now existing with respect to any liability, obligation or debt of Borrower to Lender, or (ii) to alter or amend any such guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under any such guaranty.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means ARADANA INVESTMENTS INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation HORMORZ KHOSRAVI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 2, 2008.

GUARANTOR:

HORMORZ KHOSRAVI

By:
    HORMORZ KHOSRAVI

*DOC155030922580037534000118155I0000000*

# ▲ REGIONS

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Bank/App | Loan No. | | Account | Officer |
|-----------|-----------|----------|----------|----------|---|---------|---------|
| | | | | | | | /EM041 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** APADANA INVESTMENTS INC (TIN: 20-0982375)
319 10TH AVE N
JACKSONVILLE BEACH, FL 32250

**Lender:** REGIONS BANK
Jacksonville: Main Office Branch
233 E BAY STREET
FL.JV60283D
JACKSONVILLE, FL 32202

**Guarantor:** HOSSEIN RAMEZANI (SSN: 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)
3253 FRONT ROAD
JACKSONVILLE, FL 32217

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.**

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established

EXHIBIT "Q"

# COMMERCIAL GUARANTY
## (Continued)

Loan No: 25B00375340001181551                                                                 Page 2

adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

GUARANTOR'S WAIVERS. Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Guaranty:

Amendments. This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Arbitration. Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions.

Integration. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

Interpretation. In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 25800375340001181551

Page 3

their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**CONSTRUCTION WITH OTHER GUARANTEES.** No guaranty hereafter executed and delivered with respect to any liability, obligation or debt of Borrower to Lender shall be construed or deemed (i) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to either this Guaranty or any Related Document, or (ii) to alter or amend this Guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under this Guaranty, such guaranty, or another written instrument signed by Lender, so provides by express reference to this Guaranty.

In addition, this Guaranty shall not be construed or deemed (a) to limit, restrict or otherwise adversely affect any security interest or other interest in property, or any other right, power or remedy, granted to or vested in Lender under or pursuant to any guaranty now existing with respect to any liability, obligation or debt of Borrower to Lender, or (b) to alter or amend any such guaranty, or (iii) to be, or to give rise to, any waiver by Lender of any right under any such guaranty.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means APADANA INVESTMENTS INC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation HOSSEIN RAMEZANI, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means REGIONS BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 2, 2008.

GUARANTOR:

HOSSEIN RAMEZANI

By: _____
HOSSEIN RAMEZANI

LASER PRO Lending, Ver. 4.34.00.104 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - FL K:\CFI\LPL\E3.FC TR-14765 PR-C40